THE HONORABLE TANA LIN

1

2

3

4

5

6

7

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

8

9

10

11

12

13

14

| | |
|---|---|
| ANGELA LUGO and ANDREW BRYNILDSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM SERVICES LLC,<br><br>Defendant. | No. 2:22-cv-01230-TL<br><br>**DEFENDANT AMAZON.COM SERVICES LLC'S RULE 12(B)(6) AND 12(B)(1) MOTION TO DISMISS**<br><br>NOTE ON MOTION CALENDAR: January 19, 2023<br><br>**ORAL ARGUMENT REQUESTED** |

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 2

      A.    The NYVCPA and MVL Are Directed to Disclosure of Consumers' Video
            Rental Histories.................................................................................................. 2

      B.    Plaintiffs Allege That Amazon Improperly "Retained" Their Rental
            Histories. ........................................................................................................... 4

      C.    Customers Consent to Amazon Retaining Their Rental History. .......................... 5

III.  LEGAL STANDARDS ....................................................................................... 6

IV.   ARGUMENT ...................................................................................................... 7

      A.    The NYVCPA and MVL Allow Amazon to Retain Plaintiffs' Rental
            Histories. ........................................................................................................... 7

      B.    The Statutes Do Not Provide a Private Right of Action. ...................................... 13

      C.    Plaintiffs Do Not Have Article III Standing. ...................................................... 16

      D.    Amazon Obtained Consent to Retain Plaintiffs' Rental Histories. ....................... 18

      E.    The Complaint Should Be Dismissed With Prejudice and Without Leave
            to Amend. ........................................................................................................... 20

V.    CONCLUSION .................................................................................................... 21

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL) - i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES

CASES

*Agne v. Rain City Pizza, LLC*,
   No. C10–1130–JCC, 2011 WL 11798573 (W.D. Wash. June 17, 2011) ................................7

*Am. Family Ins. Grp. v. Schroedl*,
   616 N.W.2d 273 (Minn. 2000)......................................................................................8, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................7

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) ..............................................................................................6

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) ..............................................................................................19

*Brodsky v. Friedlander*,
   744 N.Y.S.2d 795 (Sup. Ct. 2002).................................................................................8, 12

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)......................................................................................................16, 17

*Daniel v. Cantrell*,
   375 F.3d 377 (6th Cir. 2004) .............................................................................................15

*Earth Island Inst. v. Wheeler*,
   464 F. Supp. 3d 1138 (N.D. Cal. 2020) ..............................................................................7

*Ekin v. Amazon Servs., LLC*,
   84 F. Supp. 3d 1172 (W.D. Wash. 2014)...........................................................................19

*Fagerstrom v. Amazon.com, Inc.*,
   141 F. Supp. 3d 1051 (S.D. Cal. 2015)..............................................................................19

*Friedman v. Rice*,
   90 N.E.3d 800 (N.Y. 2017)................................................................................................15

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) .............................................................................................20

*Giard v. Ouellette*,
   No. CV-12-113-BLG-RFC-CSO, 2012 WL 5386958 (D. Mont. Nov. 1, 2012).....................9

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL) - ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*Hince v. O'Keefe*,
632 N.W.2d 577 (Minn. 2001).......................................................................................13

*In re DeVera v. Elia*,
56 N.Y.S.3d 609 (App. Div. 2017) ................................................................................7

*In re Murack*,
957 N.W.2d 124 (Minn. Ct. App. 2021).........................................................................7

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016).........................................................................................15

*Leonard v. McMenamins, Inc.*,
No. 2:22-cv-00094-BJR, 2022 WL 4017674 (W.D. Wash. Sept. 2, 2022) ...............17

*McKee v. Audible, Inc.*,
No. CV 17–1941–GW(Ex), 2017 WL 4685039 (C.D. Cal. July 17, 2017)................19

*Mental Hygiene Legal Serv. v. Sullivan*,
119 N.E.3d 1225 (N.Y. 2019)........................................................................................9

*People v. Gellineau*,
681 N.Y.S.2d 729 (Sup. Ct. 1998)...........................................................................8, 11

*Pine Hollow Med., P.C. v. Glob. Liberty Ins. Co. of N.Y.*,
882 N.Y.S.2d 636 (Civ. Ct. 2009) ..............................................................................12

*Rodriguez v. Perales*,
657 N.E.2d 247 (N.Y. 1995).........................................................................................14

*Rodriguez v. Sony Comput. Ent. Am., LLC*,
801 F.3d 1045 (9th Cir. 2015) .....................................................................................15

*Silkotch v. U.S. Dist. Ct. of Nev.*,
No. EDCV 20-583-GW-SPx, 2020 WL 5356920 (C.D. Cal. Jul. 2, 2020) ...............20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)......................................................................................................16

*State v. Schmid*,
859 N.W.2d. 816 (Minn. 2015)......................................................................................9

*State v. Thompson*,
950 N.W.2d 65 (Minn. 2020).......................................................................................14

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .....................................................................................20

DEFENDANTS' MOTION TO DISMISS
(No. 19-CV-00005) - iii

*Sterk v. Redbox Automated Retail, LLC,*
    672 F.3d 535 (7th Cir. 2012) ...................................................................15, 16, 18

*T & R Flooring, LLC v. O'Byrne,*
    826 N.W.2d 833 (Minn. Ct. App. 2013) ...........................................................15

*TransUnion LLC v. Ramirez,*
    141 S. Ct 2190 (2021) ...............................................................................17, 18

*Wash. Bankers Ass'n v. State,*
    198 Wn.2d 808 (2021) ......................................................................................8

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) .........................................................................7

*Wiseley v. Amazon.com, Inc.,*
    709 F. App'x 862 (9th Cir. 2017) ..................................................................19

*Wolfe v. Strankman,*
    392 F.3d 358 (9th Cir. 2004) ...........................................................................7

*Yates v. United States,*
    574 U.S. 528 (2015) ......................................................................................13

**STATUTES**

18 U.S.C. § 2710 ...................................................................................2, 15, 16

Minn. Stat. Ann. § 325I.01, *et seq.* .................................................  passim

N.Y. Gen. Bus. Law § 670, *et seq.* ................................................  passim

**RULES**

Fed. R. Civ. P. 12(b)(1) ......................................................................................7

Fed. R. Civ. P. 12(b)(6) ......................................................................................6

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 652A (1977) ...............................................18

S. Rep. No. 100-599 (1988) ...........................................................................2, 11

# I.    INTRODUCTION

Plaintiffs' Complaint fails for the most straightforward of reasons: The statutes Plaintiffs sued under simply do not say what the Complaint claims they say. Defendant Amazon.com Services LLC ("Amazon") operates Amazon Prime Video, a service that allows customers to rent streaming video content. Plaintiffs allege that two state statutes enacted decades ago—New York's Video Consumer Protection Act ("NYVCPA") and Minnesota's Videotape Law ("MVL")—obligate Amazon to regularly destroy its own records of the videos Plaintiffs rented via Prime Video. The problem for Plaintiffs is that the NYVCPA and MVL say nothing of the sort.

These statutes, instead, are directed primarily to limiting the circumstances under which a "video tape service provider" (a defined term) like Amazon may disclose its customers' rental history information to third parties. The statutes provide, for example, that such disclosures may be made in connection with court proceedings, as part of the sale of a video-rental business, or in response to a valid law enforcement request. When third parties receive rental-history information through a permitted disclosure, it is those third parties who must then destroy the information after it is no longer needed.

But that obligation does not apply to Amazon, as the statutes' plain language confirms. The destruction requirement Plaintiffs point to does not mention "video tape service providers" at all. Plaintiffs' construction of the NYVCPA and MVL is thus at odds with the statutory text, which ends the inquiry and requires dismissal. The error in Plaintiffs' statutory reading is further corroborated by multiple canons of statutory construction, as Plaintiffs' interpretation would make certain language in the statutes ineffective or superfluous, produce absurd results, and make compliance with the (non-existent) destruction obligation a practical impossibility for "video tape service providers" like Amazon.

But there is more. Because the NYVCPA and MVL were never written to impose this sort of destruction obligation, there is no private right of action under either statute to bring a claim of the type Plaintiffs assert. Likewise, Plaintiffs cannot satisfy the most basic standards of Article III,

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

because they suffered no legally cognizable injury when they looked up their own rental histories in their Amazon accounts and were reminded of videos they once rented. This trivial occurrence is literally the only "harm" Plaintiffs point to. Dkt. 1 (Class Action Complaint) ("Compl.") ¶¶ 14, 19. There is no suggestion in the Complaint that anyone, anywhere (other than Plaintiffs themselves) accessed their rental histories.

Finally, even if Plaintiffs had a statutory right to vindicate or suffered any accompanying harm, valid agreements between Amazon and Plaintiffs allow Amazon to retain and use Plaintiffs' rental history. This is called out repeatedly in those agreements, which were assented to by Plaintiffs each time they rented a video from Amazon.

Amazon asks that the Court dismiss the Complaint in full, with prejudice.

## II.    FACTUAL BACKGROUND

### A.    The NYVCPA and MVL Are Directed to Disclosure of Consumers' Video Rental Histories.

There are only two statutes (and two corresponding causes of action) at issue in the Complaint: The NYVCPA and the MVL.[1] Both statutes were enacted in the wake of the passage of the Video Privacy Protection Act of 1988 ("VPPA"), a federal statute designed to protect against unauthorized disclosure of consumers' video tape rental histories. *See generally* 18 U.S.C. § 2710; *see also* Compl. ¶¶ 24-25. The VPPA was motivated by what Congress perceived to be the disclosure of such rental histories for improper purposes—wrongfully making those histories public for political or other inappropriate reasons. *See* S. Rep. No. 100-599, at 5 (1988) ("The impetus for this legislation occurred when a weekly newspaper in Washington published a profile of [Supreme Court nominee] Judge Robert H. Bork based on the titles of 146 films his family had rented from a video store."). The NYVCPA was enacted in 1993, and the MVL in 1994.

---

[1] The NYVCPA and MVL are relatively brief. Because this statutory language is central to Amazon's Motion, for the Court's convenience the attached Appendix A contains the full text of both statutes.

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL) - 2

Because the NYVCPA and MVL are modeled after the VPPA, these two statutes likewise overwhelmingly concern unauthorized *disclosure* of a consumer's rental history to third persons. Both statutes have as defined terms "video tape service provider" and "video tape seller," which are businesses engaged in selling or renting video tapes or similar audio-visual content. *See* N.Y. Gen. Bus. Law §§ 672(4), 672(5); Minn. Stat. Ann. § 325I.01, Subds. 4 and 5. The Complaint affirmatively alleges that Amazon is a "video tape service provider" under the NYVCPA and MVL. Compl. ¶¶ 27, 31. The bulk of the statutes are directed to specified instances where a video tape service provider (like Amazon) may permissibly disclose a consumers' video rental history to other "persons," including in court proceedings, criminal investigations, as part of the sale of the underlying video tape seller's business, or with the consumer's consent. *See*, *e.g.*, N.Y. Gen. Bus. Law §§ 673(2)(b)(i)-(ii), 673(2)(b)-(c); Minn. Stat. Ann. § 325I.02, Subd. 2(2)(i), Subd. 3(2)-(3).

Both statutes contain an accompanying private right of action that is, in keeping with the remainder of the statutory language, directed specifically to the issue of unauthorized disclosure to third persons. *See* N.Y. Gen. Bus. Law § 673(1); Minn. Stat. Ann. § 325I.02, Subd. 1. In other words, if a "video tape service provider" or "video tape seller" provides a consumer's rental history to some third-party under circumstances not contemplated by the statute, then a cause of action could lie. As explained below in Section II.B, Plaintiffs point to no such conduct here—they do not allege that Amazon improperly disclosed their rental history to anyone.

In each statute, there is just a single provision dealing with the issue of retention of consumers' rental histories: "A person subject to this section shall destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under this article." *See* N.Y. Gen. Bus. Law § 673(5); Minn. Stat. Ann. § 325I.02, Subd. 6. This section does not reference obligations of "video tape service providers" or "sellers" at all.

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL) - 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

To the contrary, the retention provision refers to retention obligations of a "person," which is a term repeatedly used to refer to third persons who might, through consent or court order, obtain from a video tape service provider the rental history of a customer. *See*, *e.g.*, N.Y. Gen. Bus. Law § 673(2)(b)(i)-(ii), § 673(2)(b)-(c); Minn. Stat. Ann. § 325I.02, Subd. 2(2)(i), Subd. 3(2)-(3). There is thus nothing on the face of the language pertaining to retention to indicate that it applies to "video tape service providers" or "video tape sellers" and would impose upon such entities an obligation to regularly destroy their own records. Instead, it speaks to obligations of a "person" to destroy rental history information they might have obtained through one of the permitted processes identified in the rest of the statute, *e.g.*, with the consumers' written informed consent or through court order, once the need for that information has ceased. N.Y. Gen. Bus. Law § 673(5); Minn. Stat. Ann. § 325I.02, Subd. 6.

The subsection dealing with retention also makes specific reference to video rental history information obtained by third persons through "requests or orders for access." *See* N.Y. Gen. Bus. Law § 673(5); Minn. Stat. Ann. § 325I.02, Subd. 6. Thus, the retention provision would require the destruction of a consumer's video rental history properly obtained for a court proceeding, when those proceedings had concluded and the information was thus "no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information." *See* N.Y. Gen. Bus. Law § 673(5); Minn. Stat. Ann. § 325I.02, Subd. 6.

**B.    Plaintiffs Allege That Amazon Improperly "Retained" Their Rental Histories.**

Plaintiff Angela Lugo, a New York resident, alleges a single cause of action for violation of the NYVCPA. Compl. ¶¶ 60-69. Plaintiff Andrew Brynildson, a Minnesota resident, alleges the same as to the MVL. *Id.* ¶¶ 71-81. The harm claimed is that Amazon improperly "maintains" each Plaintiff's "video rental histories" for content that each has rented via Amazon Prime Video. *Id.* ¶¶ 68, 79. Plaintiffs do not allege that their video rental histories were disclosed to any third party without their consent. Rather, they allege that each could view, in their own accounts, "the titles of the videos [they] rented, as well as the date [they] rented it and the price [they] paid for it." *Id.*

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL) - 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   ¶¶ 14, 19. So, the sole "injury" Plaintiffs claim they suffered occurred when they accessed their

2   own Amazon Prime Video account history—records whose confidentiality the Complaint does not

3   claim was ever compromised—and saw the "titles of the videos" each of them had chosen to rent.[2]

4          Plaintiffs allege that when Amazon retained this information and provided it to them on

5   request, Amazon violated the NYVCPA and MVL because these records reflect rentals each

6   Plaintiff made more than one year prior. *Id.* ¶¶ 12-14, 17-19 (alleging that as of June 2022, Lugo's

7   account history still displayed the titles of videos rented in January 2020 and Brynildson's account

8   history still displayed the titles of videos rented in March 2021). In Plaintiffs' view, Amazon

9   should have deleted all records of rentals 30 days after the rental was requested, because 30 days

10  is the expiration period for videos rented through Amazon Prime Video. *Id.* ¶¶ 66-68, 77-79.

11  Alternatively, Plaintiffs contend that Amazon can maintain records of a consumer's rental history

12  for, at most, one year. *Id.* ¶ 51. The Complaint thus alleges the NYVCPA and MVL require

13  Amazon to destroy all records of individual rental histories for each individual customer no more

14  than one year after the rental period has expired for that individual video. *Id.* ¶¶ 64-67, 75-78.

15  **C.    Customers Consent to Amazon Retaining Their Rental History.**

16         Amazon customers like Plaintiffs who rent videos from Amazon Prime Video must first

17  create an account on Amazon.com and agree to Amazon's Conditions of Use. *See* Declaration of

18  Eugide Matondo in Support of Amazon's Motion to Dismiss ("Matondo Decl."), ¶¶ 2-3, 6-8; *see*

19  *also* Compl. ¶¶ 41-42. Subsequently, every time a customer rents or purchases a video with

20  Amazon Prime Video, they must agree to Amazon Prime Video's Terms of Use (the "Terms of

21  Use"). Matondo Decl., ¶ 6. Customers are affirmatively advised of their assent to the Terms of Use

22

23         [2] Amazon interprets Plaintiffs' Complaint to allege that the purported breach of the
NYVCPA and MVL occurred as to the retention of information regarding the specific titles of the
24  videos they rented. Compl. ¶¶ 3, 8-9, 50. The Complaint alludes to Amazon retaining Plaintiffs'
credit card information and name, although it does not allege with any specificity that this would
25  have violated either statute in the context of Plaintiffs' ongoing relationship with Amazon. *Id.* ¶¶ 5,
7, 49. Nevertheless, to the extent the Complaint could be construed as having embraced the
26  retention of this information, Amazon's arguments pertaining to retention of video rental history
all apply with equal force to its retention of credit card and name information, too.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

with each rental or purchase, through a hyperlink labeled "Terms" that is displayed in contrasting text on the order page for the rental. *Id.* ¶ 7. The Terms of Use incorporate by reference Amazon's Conditions of Use as well as Amazon's Privacy Notice. *Id.* ¶ 8.

Multiple provisions in the Terms of Use and Privacy Notice explain that Amazon collects information regarding a customer's rentals and related purchases.

The Terms of Use specify that usage of the Prime Video Service involves providing Amazon "with information relating to your use and the performance of the Service and Software." *Id.*, Ex. 1 (Terms of Use § 5(b)). This includes viewing history: "For example, the Software may provide Amazon with information related to the Digital Content that you download and stream and your use of that Digital Content (such as whether and when you viewed the Digital Content, which may, among other things, help us measure the Viewing Period for Rental Digital Content)." *Id.* (emphasis added).

The accompanying Privacy Notice likewise specifies that Amazon collects and uses information obtained when consumers "download, stream, view, or use content on a device or through a service or application on a device" or "use our services such as Prime Video." *Id.*, Ex. 2 (Privacy Notice) at "Examples of Information Collected." The Privacy Notice also explains that Amazon collects "purchase and content use history." *Id.* It goes on to identify multiple permitted uses for collected information including to "communicate with you about orders, products and services" as well as to "recommend features, products, and services that might be of interest to you." *Id.* ("For What Purposes Does Amazon Use Your Personal Information."). Thus, the Terms of Use and Privacy Notice confirm, repeatedly, that Amazon collects and retains information pertaining to customers' video rental histories.

## III.    LEGAL STANDARDS

A Rule 12(b)(6) motion tests the legal adequacy of a complaint. "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion

1   to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim

2   to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

3   omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

4   of a cause of action will not do.'" *Id.* (citation omitted).

5        A Rule 12(b)(1) motion challenges the plaintiff's showing of subject matter jurisdiction.

6   The party invoking federal court jurisdiction bears the burden of establishing that the court has the

7   authority to grant the relief requested. *Earth Island Inst. v. Wheeler*, 464 F. Supp. 3d 1138, 1141

8   (N.D. Cal. 2020). A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*,

9   227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to

10  the allegations pled in the complaint, and the challenger asserts that those allegations are

11  insufficient "on their face" to invoke federal jurisdiction. *See Wolfe v. Strankman*, 392 F.3d 358,

12  362 (9th Cir. 2004) (citation omitted).

## IV.    ARGUMENT

### A.    The NYVCPA and MVL Allow Amazon to Retain Plaintiffs' Rental Histories.

15        Whether Plaintiffs have stated a claim under either the NYVCPA or MVL turns on whether

16  the right they have claimed is provided for by these statutes. *Agne v. Rain City Pizza, LLC*, No.

17  C10–1130–JCC, 2011 WL 11798573, at *5 (W.D. Wash. June 17, 2011) (plaintiff fails to state a

18  claim for relief when statute does not apply to the conduct complained of). The answer to that

19  question depends principally on the statutes' text. *See In re DeVera v. Elia*, 56 N.Y.S.3d 609, 613

20  (App. Div. 2017) ("When interpreting a statute, we turn first to its text as the best evidence of the

21  Legislature's intent and as a general rule a statute's plain language is dispositive."); *In re Murack*,

22  957 N.W.2d 124, 128 (Minn. Ct. App. 2021) ("The goal of statutory interpretation is to effectuate

23  the intent of the legislature. When the language of a statute is clear, this court will enforce that

24  plain language without looking further.").[3]

---

[3] Amazon assumes for purpose of this Motion, and without waiving any later argument on choice-of-law issues, that New York Law governs the interpretation of the NYVCPA, while Minnesota law governs the interpretation of the MVL. In all events, statutory interpretation

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Although the text is the most powerful indicator of statutory meaning, New York and Minnesota courts also require interpretations that effectuate the language of the statute as a whole without rendering certain words or sections superfluous or insignificant. *People v. Gellineau*, 681 N.Y.S.2d 729, 801 (Sup. Ct. 1998) ("[A] court, in interpreting a statute, should not create a situation where words would be rendered useless or superfluous. . . . Each word of a statute is to be interpreted to serve a useful purpose.") (internal citations omitted); *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) ("A statute should be interpreted, whenever possible, to give effect to all of its provisions; no word, phrase, or sentence should be deemed superfluous, void, or insignificant."). Courts must also avoid constructions that would produce absurd or unreasonable results. *See Brodsky v. Friedlander*, 744 N.Y.S.2d 795, 796 (Sup. Ct. 2002) ("The guidelines for the construction and interpretation of statutes provides that a Court shall construe a statute to avoid unreasonable or absurd interpretations of the law."); Minn. Stat. Ann. § 645.17(1) ("In ascertaining the intention of the legislature the courts may be guided by the following presumptions: (1) the legislature does not intend a result that is absurd, impossible of execution, or unreasonable.").

Each of these settled canons of statutory construction leads to the same conclusion: The NYVCPA and MVL do not impose the counter-textual and far-reaching retention obligations the Complaint invents. Plaintiffs' NYVCPA and MVL claims depend on language that is simply not in the statutes, that would make certain provisions a nullity (or at least of no practical effect), and that would render other sections nonsensical.

***First***, the plain language of the NYVCPA and MVL does not impose *any* obligation on "video tape service providers" to purge records of consumers' rental history. The Complaint alleges that the statutes "require[] that video tape service providers, like [Amazon], 'destroy personally identifiable information as soon as practicable.'" Compl. ¶ 31. But this entirely

---

principles of Washington law would require the same result. *See, e.g.*, *Wash. Bankers Ass'n v. State*, 198 Wn.2d 808, 821 (2021) ("[W]e look first to the text to discern legislative intent.").

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

misquotes the statutes, inserting language that is not there. The actual text of the statutes reads: "a *person* subject to this section shall destroy personally identifiable information as soon as practicable." N.Y. Gen. Bus. Law § 673(5); Minn. Stat. Ann. § 3251.02, Subd. 6 (emphasis added). Plaintiffs' claims depend on blue-penciling this language to read: "a ~~person~~ video tape service provider subject to this section shall destroy personally identifiable information as soon as practicable." But Plaintiffs cannot create a cause of action with statutory language that does not exist. *See Giard v. Ouellette*, No. CV–12–113–BLG–RFC–CSO, 2012 WL 5386958, at *5 (D. Mont. Nov. 1, 2012) ("The Court concludes therefore that the complaint does not state a cause of action against [defendant]. . . . To hold otherwise would, in effect, require the Court to insert [a] word . . . into the language of the statute, which the Court may not do."), *report and recommendation adopted*, 2013 WL 796366 (D. Mont. Mar. 4, 2013).

Remaining statutory language confirms that this deliberate choice of words in the retention subsection—with the drafters choosing the word "person," and not the defined term "video tape seller"—was no accident. In the section of the NYVCPA dealing with disclosure and retention, there are *six* discrete and specific references to "video tape service providers" when dealing with the obligations of those providers. *See* N.Y. Gen. Bus. Law § 673(1), (2), (2)(d), (3), (3)(c). The same is true for the MVL, where "video tape seller" or "video tape service provider" are referred to *eighteen* different times, all concerning disclosure obligations. Minn. Stat. Ann. § 3251.02, Subds. 1-4, 7. Thus, when the New York and Minnesota legislatures wanted to set the obligations of "video tape service providers" like Amazon, they knew exactly how to do so: They used that defined term. *See Mental Hygiene Legal Serv. v. Sullivan*, 119 N.E.3d 1225, 1230 (N.Y. 2019) ("It is a bedrock rule of statutory construction that, where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout, absent any indication of a contrary intent.") (cleaned up); *State v. Schmid*, 859 N.W.2d. 816, 822-23 (Minn. 2015) ("There is a presumption of consistent usage throughout a statute. There is a natural presumption

that identical words used in different parts of the same act are intended to have the same meaning.") (internal citations and quotation marks omitted).

The inverse is true, too: When the statutes use the word "person" in connection with disclosure or retention obligations, they consistently refer to the obligations or duties of third-persons, *not* the duties of video tape service providers like Amazon. So, for example, the MVL allows rental history information to be disclosed under court order in civil proceedings, "if the consumer is given reasonable notice by *the person seeking the disclosure* of the court proceeding relevant to the issuance of the court order." Minn. Stat. Ann. § 325I.02, Subd. 2(2)(i) (emphasis added); *see also* N.Y. Gen. Bus. Law § 673(2)(b)(i) (same). The NYVCPA follows this approach, too, referring to "persons" as third-parties who request and receive video rental history outside the confines of the consumer and video tape service provider relationship: "A video tape service provider may disclose personally identifiable information concerning any consumer . . . (b) *to any person* with the informed, written consent of the consumer." N.Y. Gen. Bus. Law § 673(3) (emphasis added); *see also* Minn. Stat. Ann. § 325I.02, Subd. 3(3) (same).

The retention provision itself reaffirms this reading, by explaining that a consumer's rental history information need not be destroyed if there is a "pending *request[] or order[] for access* to the information under this section." N.Y. Gen. Bus. Law § 673(5) (emphasis added); Minn. Stat. Ann. § 325I.02, Subd. 6 (same). Thus, the retention obligation is tethered to a pending "request or order[]" involving a third-party. Indeed, this language is rendered nonsensical if it is applied to video tape service providers like Amazon, because Amazon does not "request" or "order" any consumer to provide it with "access" to information on that consumer's rentals. The consumer provides it directly and voluntarily when the rental request is made. *See* N.Y. Gen. Bus. Law § 672(1) ("The term 'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider or video tape seller.").

***Second***, Plaintiffs' insistence that there is an unstated, implied obligation for video tape service providers to routinely destroy their own records renders other provisions of the NYVCPA

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL) - 10

and MVL superfluous or ineffective. *Gellineau*, 681 N.Y.S.2d at 801; *Am. Family Ins. Grp.*, 616 N.W.2d at 277. Both the NYVCPA and MVL contain model language written to gain a consumer's consent to disclose rental history information to third-party marketers. N.Y. Gen. Bus. Law § 672(6); Minn. Stat. Ann. § 325I.02, Subd. 4. Video tape service providers who obtain this consent are, in turn, expressly immunized from liability under the statutes. N.Y. Gen. Bus. Law § 672(6); Minn. Stat. Ann. § 325I.02, Subd. 3(3). This model language is silent as to a consumer's consent that a video tape service provider *retain* the consumer's rental history. N.Y. Gen. Bus. Law § 673(3)(b); Minn. Stat. Ann. § 325I.02, Subd. 4. Thus, Plaintiffs' construction of the statutes assumes the New York and Minnesota legislatures went to the trouble of writing language to shield video tape service providers from liability under the statutes, even though providers who used that language word for word would *still* be exposed to liability if they failed to affirmatively add language addressing their supposed retention obligations. Plaintiffs' reading thus makes this statutorily-driven "consent" mechanism wholly ineffective, by baiting video tape service providers into using a form of written consent that does not protect them. The far more logical reading, and the one that the statutes' language confirms, is that the model consent language omits any reference to retention because a video tape service provider *does not have* any obligation to routinely destroy its own rental records, and so no consent is needed.

**Third**, Plaintiffs' reading leads to absurd results. For example, both statutes authorize a video tape service provider to disclose rental history records to a potential buyer of their business. N.Y. Gen. Bus. Law § 673(3)(c); Minn. Stat. Ann. § 325I.02, Subd. 3(2). The legislative history for the parallel VPPA explains that this disclosure exemption is needed because, "when a [video tape service provider's] business is sold, its customer list is often its most valuable asset." *See* S. Rep. No. 100-599, at 14; *see also* Dkt. 1-1, Compl., Ex. A (NYVCPA's Memorandum in Support of Legislation) ("Sponsor Memo") at 3 (explaining that "video lists have tremendous commercial utility"). Yet, this "most valuable asset" would have to be routinely purged by video tape service providers—even though no language in the statutes calls for that—if Plaintiffs' construction of the

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL) - 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   statutes were correct. This is an absurd result that statutory construction rules strongly disfavor.

2   *Brodsky*, 744 N.Y.S.2d at 796; Minn. Stat. § 645.17(1).

3          Plaintiffs' reading would also make the statutes an administrative nightmare to implement.

4   According to Plaintiffs, as soon as the rental period for an individual video rental has expired, that

5   initiates a ticking retention clock for the record related to that specific rental. Compl. ¶¶ 66-68,

6   77-79. This would require a video tape service provider to track and then individually delete the

7   record for that rental, and that rental only, once the period expires. And because video tape service

8   providers rent videos daily, that would mean that hundreds or even thousands of deletion events

9   would occur daily, too. So, daily records destruction—and a correspondingly sophisticated

10  tracking regime to pinpoint each individual rental event and the accompanying destruction

11  deadline—would become a central and required task of any video rental business. This could not

12  have been what the drafters intended, especially when no statutory text dictates this obligation.

13         And although these Plaintiffs have chosen the date that the rental period expires as the

14  destruction trigger, Compl. ¶¶ 68, 79, nothing in the language of the statutes ties destruction to that

15  event—it is just a deadline invented by Plaintiffs. So, with no relevant statutory standard to guide

16  when a video tape service provider's self-destruct button must be pushed, the statutes are reduced

17  to unworkable vagueness. You don't have to be a talented screenwriter to come up with unresolved

18  storylines. What about a video tape seller that offers a lifetime money-back guarantee for

19  purchases? Or one that allows credit for future rentals based on prior rentals (*e.g.*, rent 10, get 1

20  rental free)? Are video tape sellers that provide customers with recommendations based on prior

21  rental history allowed to retain records, while those who do not must destroy records more

22  regularly (and if so, when)? These and countless other scenarios are left to guesswork for video

23  tape service providers attempting to comply with Plaintiffs' re-writing of the statutes, and confirm

24  the incorrectness of Plaintiffs' strained interpretation. *Pine Hollow Med., P.C. v. Glob. Liberty Ins.*

25  *Co. of N.Y.*, 882 N.Y.S.2d 636, 641 (Civ. Ct. 2009) ("The common mandate of statutory

26  construction is to assume that the Legislature did not intend a patently absurd result.") (citation

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL) - 12

1   and internal quotation marks omitted); *Hince v. O'Keefe*, 632 N.W.2d 577, 584 (Minn. 2001) ("To
2   follow this reasoning would certainly produce an absurd result and would violate our basic rules
3   of statutory construction."); Minn. Stat. Ann. § 645.17(1) (courts should presume that the
4   legislature did not enact statute that is "impossible of execution").

5       For all these reasons, the NYVCPA and MVL do not impose upon Amazon (or any other
6   video tape service provider) the unwritten and ill-defined destruction obligation that Plaintiffs'
7   claims depend upon. And because these defects cannot be cured by amendment, the Complaint
8   should be dismissed in full, with prejudice.

9   **B.   The Statutes Do Not Provide a Private Right of Action.**

10      Even if the Court were to adopt Plaintiffs' exceptionally strained view of the NYVCPA
11  and MVL, Plaintiffs' claims would fail for the additional reason that neither statute authorizes
12  consumers to sue for wrongful retention of rental history. In fact, it appears that no court has ever
13  recognized a private right of action for retention under either statute. This is hardly surprising, as
14  interpreting these statutes to provide a private right of action would be contrary to their plain
15  language, structure, and legislative history. Moreover, courts have consistently refused to
16  recognize a private right of action for retention under the federal VPPA—the statute on which the
17  NYVCPA and MVL are modeled.

18      ***First***, the express language of the NYVCPA and MVL make clear that consumers may sue
19  only for prohibited *disclosures* and, even then, only for "*knowing*" disclosures. *See* N.Y. Gen. Bus.
20  Law § 673(1) (authorizing a private right of action for "an aggrieved person" to sue a video tape
21  service provider that "*knowingly discloses*, to any person, personally identifiable information.")
22  (emphasis added); Minn. Stat. Ann. § 325I.02, Subd. 1 (same).[4] Interpreting the statutes to allow
23  consumers to sue video tape service providers for mere *retention* of rental history—but not for

---

24      [4] The titles of both statutes also evidence that their focus is on disclosure, not retention. *See*
25  N.Y. Gen. Bus. Law § 673 (titled "Wrongful disclosure of video tape rental records"); Minn. Stat.
    Ann. § 325I.02 (titled "Disclosure of video tape rental or sales records"); *see also, e.g.*, *Yates v.*
26  *United States*, 574 U.S. 528, 540 (2015) ("[T]he title of a statute and the heading of a section are
    tools available for the resolution of a doubt about the meaning of a statute.") (citation omitted).

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL) - 13

negligent or reckless *disclosure* of the same rental history—would defy common sense. N.Y. Gen. Bus. Law § 673(1); Minn. Stat. Ann. § 325I.02, Subd. 1. Further, both statutes' prohibitions on knowing disclosure directly reference separate statutory provisions providing for recovery of monetary damages, costs, and reasonable attorneys' fees. *See* N.Y. Gen. Bus. Law § 673(1) ("A video tape service provider who knowingly discloses . . . shall be liable to the aggrieved person for the relief provided in" N.Y. Gen. Bus. Law § 675); N.Y. Gen. Bus. Law § 675 ("Any person found to be in violation of this article shall be liable to the aggrieved consumer for all actual damages sustained by such consumer . . . plus costs, disbursements and reasonable attorneys' fees."); Minn. Stat. Ann. § 325I.02, Subd. 1 (referencing Minn. Stat. Ann. § 325I.03, which similarly provides for "damages . . . plus costs, disbursements and reasonable attorney fees"). In contrast, the retention provisions of the NYVCPA and MVL do not expressly provide for liability to an "aggrieved person," nor do they reference the separate remedies set forth in N.Y. Gen. Bus. Law § 675 and Minn. Stat. Ann. § 325I.03. A finding that either statute, by way of its silence on the issue, intended to authorize a private right of action for retention alone would render the provisions of N.Y. Gen. Bus. Law § 673(1) and Minn. Stat. Ann. § 325I.02, Subd. 1 entirely superfluous—"a result that the rules of statutory construction disfavor." *Rodriguez v. Perales*, 657 N.E.2d 247, 249 (N.Y. 1995); *see also, e.g.*, *State v. Thompson*, 950 N.W.2d 65, 69 (Minn. 2020) (courts should "attempt to avoid interpretations that would render a word or phrase superfluous, void, or insignificant, thereby ensuring each word in a statute is given effect").

***Second***, although Plaintiffs suggest that the Sponsor Memo aids in their search for a private right of action for retention, it does no such thing. *See* Compl. ¶¶ 30, 34. It is true that the Sponsor Memo evidences the New York State Assembly's intent to address so-called "flaws" in the federal VPPA. *Id.* ¶ 34. But those flaws relate specifically to the VPPA's provisions regarding *disclosure* of rental history. *See* Sponsor Memo at 2-3 ("The Federal government recognized the privacy problems presented by the video age by enacting the [VPPA]. Unfortunately, that law is flawed in that it allows disclosure of personally identifiable information to any person if the disclosure is

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL) - 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

only of the name and address of the consumer and the video consumer has been given the opportunity to prohibit such disclosure. An even more serious flaw is the new law's exception for commercial mailing lists and similar purposes . . . ."). The Sponsor Memo is altogether silent on the issue of retention and the creation of a private right of action.

*Third*, and relatedly, courts interpreting the federal VPPA have consistently held that it does not provide a private right of action for retention of rental history.[5] The VPPA employs *identical* language to the NYVCPA and MVL as to retention. *Compare* 18 U.S.C. § 2710(e) (consumer PII shall be "destroy[ed] . . . as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access" to the information), *with* N.Y. Gen. Bus. Law § 673(5) (same), *and* Minn. Stat. Ann. § 325I.02, Subd. 6 (same). And the Ninth Circuit and other courts have repeatedly held that this language allows consumers to sue for wrongful and intentional *disclosure*, but not for wrongful *retention*. *See, e.g.*, *Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1050-53 (9th Cir. 2015) (affirming dismissal of unlawful retention claim for lack of a private right of action under the VPPA "[a]fter carefully examining the legislative history, and the structure and language of [the statute] as a whole"); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 281 (3d Cir. 2016) (affirming dismissal of unlawful retention claim and concluding that "only video tape service providers that disclose personally identifiable information can be liable under" the VPPA); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 537 (7th Cir. 2012) (concluding that "the more plausible interpretation is that [the VPPA's private right of action] is limited to enforcing the prohibition on disclosure"); *Daniel v. Cantrell*, 375 F.3d 377, 382-84 (6th Cir. 2004) (noting that "the structure of the statute makes it clear that a civil action

---

[5] New York and Minnesota courts routinely rely on federal authority in interpreting state analogues to federal statutes. *See, e.g.*, *Friedman v. Rice*, 90 N.E.3d 800, 813 (N.Y. 2017) (explaining that "federal case law and legislative history . . . are instructive" when interpreting state statutes "patterned after [a] federal analogue"); *T & R Flooring, LLC v. O'Byrne*, 826 N.W.2d 833, 836 (Minn. Ct. App. 2013) (noting that where a state statute is "similar to its federal analogue . . . it is appropriate to refer to the federal caselaw").

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL) - 15

1    may be brought based on only a violation of [the retention provision]" and noting that "[j]ust

2    because Congress' goal was to prevent the disclosure of private information, does not mean that

3    Congress intended the implementation of every conceivable method of preventing disclosures").

4    There is no reason to depart from this long line of precedent here, where the relevant text of the

5    NYVCPA and MVL is substantially identical to that of the VPPA.[6]

6         The NYVCPA and MVL do not—nor were they intended to—provide a private right of

7    action for retention alone, and Plaintiffs' Complaint should be dismissed for this reason, as well.

8    **C.    Plaintiffs Do Not Have Article III Standing.**

9         The NYVCPA and MVL do not prohibit, nor provide a private right of action for, the

10   conduct alleged in the Complaint. But even if they did, Plaintiffs' claims would still fail because

11   they have not alleged any actual harm resulting from retention of their rental histories.

12        To establish standing under Article III, Plaintiffs must allege facts showing that they

13   suffered an injury in fact that is "concrete, particularized, and actual or imminent; fairly traceable

14   to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*,

15   568 U.S. 398, 409 (2013) (citation omitted). A "bare procedural violation, divorced from any

16   concrete harm" does not satisfy this standard. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

17   Instead, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory

18

19        [6] Plaintiffs point to language authorizing a claim against "[a]ny person found to be in
20   violation" of "this article" (N.Y. Gen. Bus. Law § 675(1)) or "this section" (Minn. Stat. Ann. §
     325I.03), evidently in support of their claim that the NYVPPA and MVL "explicitly provide[] a
21   private right of action" Compl. ¶¶ 32-33, 37-38. This proves too much. Both of these damages
     provisions are referenced *only* in connection with the statutes' prohibitions on disclosure—not
22   retention. *See* N.Y. Gen. Bus. Law § 673(1); Minn. Stat. Ann. § 325I.02, Subd. 1. Neither supports
     Plaintiffs' effort to expand the statutes in such a sweeping manner. Further, Plaintiffs' assertion
23   that the statutes' aforementioned references to "this article" or "this section" represent a "deviation
     from the VPPA" (Compl. ¶¶ 34-39) is plainly false. The VPPA's damages provision is no different
24   (*see* 18 U.S.C. § 2710(c), creating a private right of action for a "violation of *this section*")
     (emphasis added)), and courts have unanimously rejected the argument that this somehow creates
25   a private right of action for anything other than wrongful disclosure. *See, e.g.*, *Sterk*, 672 F.3d at
     538 (noting that while the VPPA "fail[s] to specify the scope of subsection (c)," the "more
26   plausible interpretation is that it is limited to enforcing the prohibition of disclosure" for various
     reasons, including because the damages provision is referenced by the VPPA's disclosure
     provision but not its other subsections).

1
2
3
4

violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct 2190, 2205 (2021). In evaluating concreteness, courts look to "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* (citation omitted).

5
6
7
8
9
10
11
12
13
14
15

Plaintiffs fall far short of these standards. Nowhere in their Complaint do Plaintiffs suggest that they suffered any harm resulting from the alleged retention of their rental histories. Plaintiffs do not claim, for example, that their rental histories—or any other information about them—was disclosed to anyone. At most, they imply that retention of rental history *could* increase the likelihood of disclosure (*see* Compl. ¶ 30), but these allegations are too abstract and do not establish that any harm that is threatened, much less "certainly impending." *Clapper*, 568 U.S. at 416 (explaining that plaintiffs "cannot manufacture standing . . . based on their fears of hypothetical future harm that is not certainly impending"); *cf. Leonard v. McMenamins, Inc.*, No. 2:22-cv-00094-BJR, 2022 WL 4017674, at *3 (W.D. Wash. Sept. 2, 2022) (rejecting argument that "increased risk of identity theft" constitutes an injury-in-fact where plaintiffs did not "adequately allege that the risk of identity theft has materialized in any respect").

16
17
18
19
20
21
22
23
24
25
26

Nor do Plaintiffs suggest that the alleged retention of their rental histories, without disclosure, invaded any historically recognized right to privacy. In this regard, *TransUnion* is instructive. There, the Supreme Court considered whether plaintiffs had alleged a "concrete harm" sufficient to confer standing, where they claimed that TransUnion had violated the Fair Credit Reporting Act by including erroneous information in their credit files, including alerts labeling them as potential terrorists, drug traffickers, or serious criminals. 141 S. Ct. at 2202. The first class was comprised of individuals whose reports were disclosed to potential creditors; the second of individuals whose reports were not disclosed to anyone, although the internal files contained similarly erroneous information. *Id.* In reviewing whether the plaintiffs had standing, the Court explained that "[c]entral to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit[.]" *Id.* at 2200.

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL) - 17

While noting that the most obvious concrete injuries are "traditional tangible harms, such as physical harms and monetary harms," the Court explained that "intangible harms" such as "reputational harms, disclosure of private information, and intrusion upon seclusion," may also give rise to standing. *Id.* at 2204.

With these principles in mind, the Court held that members of the first class had alleged a concrete injury because the harm from being labeled a potential terrorist, drug trafficker, or serious criminal "bears a sufficiently close relationship to the harm from a false and defamatory statement." *Id.* at 2209. Members of the second class, on the other hand, had not alleged such an injury because "retention of information lawfully obtained, without disclosure, traditionally has not provided the basis for a lawsuit in American courts[.]" *Id.* (citation omitted). Here, like the class members without standing in *TransUnion*, Plaintiffs seek to maintain this suit based on the mere retention of their rental histories. But the allegations pleaded in the Complaint do not bear a "close relationship" to the tort of invasion of privacy, nor do they otherwise give rise to any injury in fact. *See* Restatement (Second) of Torts § 652A (1977); *see also Sterk*, 672 F.3d at 538 ("If, though not timely destroyed, [rental history] remained secreted in the video service provider's files until it was destroyed, there would be no injury."). Plaintiffs' claims fail for this reason, as well.

**D.    Amazon Obtained Consent to Retain Plaintiffs' Rental Histories.**

Finally, even if the Court were to construe the NYVCPA and MVL to obligate Amazon to continuously destroy consumers' rental records and to provide a private right of action for failure to do so (they do neither), *and* were *also* to conclude that Plaintiffs' being able to view a record of their *own* prior rentals in their *own* Amazon accounts constitutes injury in fact (it does not), there would still be an insurmountable hurdle to Plaintiffs' claims: Plaintiffs have repeatedly agreed that Amazon can retain and use their rental histories.

Courts enforce parties' online agreements so long as: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her

1   assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

2   The *Berman* panel also confirmed that "[a] user's click of a button can be construed as an

3   unambiguous manifestation of assent" when "the user is explicitly advised that the act of clicking

4   will constitute assent to the terms." *Id.* at 857. The court also confirmed that "it is permissible to

5   disclose terms and conditions through a hyperlink" when "the fact that a hyperlink is present [is]

6   readily apparent." *Id.* All of those features are present here.

7        Plaintiffs received notice of the Terms of Use and had the opportunity to review them by

8   selecting a conspicuous hyperlink. Matondo Decl. ¶¶ 6-7. They thus agreed to the Terms of Use

9   which, in turn, stated that the Conditions of Use and Privacy Notice would apply to their use of

10  Amazon Prime Video. *Id.* ¶ 8; *see also Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th

11  Cir. 2017). Plaintiffs then re-assented to the Terms of Use and Privacy Notice every time they

12  rented videos from Amazon Prime Video, with similarly conspicuous disclosures of those policies.

13  Matondo Decl., ¶¶ 6-8. Courts have repeatedly held that Amazon's process for account creation

14  and subsequent transactions, like the one employed here, provides adequate notice to consumers

15  and results in binding agreement. *See, e.g.*, *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051,

16  1073 (S.D. Cal. 2015) (affirming enforcement of arbitration clause based on plaintiff's agreement

17  to Amazon's Conditions of Use when signing up for an account and making purchases), *aff'd sub

18  nom. Wiseley*, 709 F. App'x 862; *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1175-76 (W.D.

19  Wash. 2014) (noting that to sign up for Amazon Prime, users must accept the Prime Terms of

20  Use); *McKee v. Audible, Inc.*, No. CV 17–1941–GW(Ex), 2017 WL 4685039, at *11 n.7 (C.D.

21  Cal. July 17, 2017) (holding that the Amazon Conditions of Use were enforceable because they

22  were disclosed and hyperlinked at checkout).

23       Plaintiffs have thus given their permission—repeatedly—for Amazon to collect and retain

24  their rental histories for a variety of reasons: (1) to monitor "information related to the Digital

25  Content that you download and stream and your use of that Digital Content," (2) to track "purchase

26  and content use history," (3) to "communicate with you about orders, products and services," or

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL) - 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

(4) to "recommend features, products, and services that might be of interest to you." *See* Matondo Decl., Ex. 1 (Terms of Use) at § 5(b) ("[Amazon Prime Video] may provide Amazon with information related to the Digital Content that you download and stream and your use of that Digital Content (such as whether and when you viewed the Digital Content . . ."); Ex. 2 (Privacy Notice) at "Examples of Information Collected" ("You provide information to us when you: . . . download, stream, view, or use content on a device or through a service or application" or "use our services such as Prime Video," including "purchase and content use history"). So even if Plaintiffs are correct that Amazon's retention rights are dependent on a determination that the "information is no longer necessary for the purposes for which it was collected," Plaintiffs have not plausibly alleged *any* facts indicating that some combination of these multiple permitted uses does not enable Amazon to have retained their rental histories for the time periods pointed to in the Complaint. *See* Compl. ¶¶ 12-14, 17-19. The Complaint fails to state a claim for this reason as well. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998) (holding that courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

**E.**     **The Complaint Should Be Dismissed With Prejudice and Without Leave to Amend.**

     Amazon's central arguments for dismissal are tied to Plaintiffs' inability to anchor their causes of action in any rights conferred by the NYVCPA or MVL. *See* Sections IV.A and B, *infra*. Because Plaintiffs cannot change the language of these statutes with an amended complaint, dismissal with prejudice is required. *See Silkotch v. U.S. Dist. Ct. of Nev.*, No. EDCV 20-583-GW-SPx, 2020 WL 5356920, at *2 (C.D. Cal. Jul. 2, 2020) (where there is "no textual basis" for plaintiff's statutory claim and "no language creating a private right of action," dismissal with prejudice is required because the plaintiff "cannot possibly amend"). The same is true as to Amazon's consent-based argument. The language of the Terms of Use and Privacy Notice cannot be rewritten with an amended complaint, and so leave to amend would be futile. *Gardner v.*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  *Martino*, 563 F.3d 981, 990 (9th Cir. 2009) ("When a proposed amendment would be futile, there

2  is no need to prolong the litigation by permitting further amendment.") (cleaned up).

### V.    CONCLUSION

4      For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

DATED: November 11, 2022          **PERKINS COIE LLP**

*s/ Charles C. Sipos*
Charles C. Sipos, Bar No. 32825
*CSipos@perkinscoie.com*
Lauren J. Tsuji, Bar No. 55839
*LTsuji@perkinscoie.com*
Ellie F. Chapman, Bar No. 55881
*EChapman@perkinscoie.com*
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Defendant Amazon.com Services LLC*

DEFENDANT'S MOTION TO DISMISS
(No. 2:22-CV-01230-TL) - 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

## <u>CERTIFICATE OF CONFERRAL</u>

2

3      Pursuant to Sections II.D and II.I of this Court's Standing Order for All Civil Cases,

4 the undersigned counsel for Defendant Amazon.com Services, LLC certifies that on October

5 17, 2022, the parties held a telephonic conference to discuss the substance of Amazon's

6 Motion to Dismiss. Plaintiffs declined to amend their pleading to cure the defects identified

herein.

7

8                                           *s/ Charles C. Sipos*
                                            Charles C. Sipos, WSBA No. 32825
9                                           CSipos@perkinscoie.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF CONFERRAL
(No. 2:22-CV-01230-TL)

1

## <u>CERTIFICATE OF SERVICE</u>

2

On November 11, 2022, I caused to be electronically filed the foregoing with the Clerk

3

of Court using the CM/ECF system, which will send notification of such filing to all counsel of

4

record. I also caused to be served upon the below, at the address stated below, via the method of

5

service indicated, a true and correct copy of the foregoing:

6

7

8

9

10

11

12

| **BURSOR & FISHER, P.A.**<br>Joel D. Smith<br>1990 N. California Blvd., Suite 940<br>Walnut Creek, CA 94596<br>Jsmith@bursor.com<br><br>Christopher Reilly<br>701 Brickell Ave, Suite 1420<br>Miami, FL 33131<br>creilly@bursor.com | _____ Via hand delivery<br>__X__ Via U.S. Mail, 1st Class<br>_____ Via Overnight Delivery<br>_____ Via Facsimile<br>__X__ Via Email |
| --- | --- |

13

I certify under penalty of perjury that the foregoing is true and correct.

14

DATED this 11th day of November, 2022.

15

16

*s/ Charles C. Sipos*
Charles C. Sipos, Bar No. 32825

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
(No. 2:22-CV-01230-TL)